545 A.2d 452

Windber Hospital, Wheeling Clinic, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued October 6, 1987, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

420

*Jeffrey L. Berkey, Fike, Cascio & Boose,* for petitioner.

*Jason W. Manne,* Assistant Counsel, for respondent.

OPINION BY JUDGE DOYLE, August 5, 1988:

This is an appeal by Windber Hospital, Wheeling Clinic (Windber) from an order of the Department of Public Welfare's (DPW's) Office of Hearings and Appeals to deny payment for certain hospitalization costs to Windber.

The facts indicate that one B. J. was admitted to Windber Hospital on December 29, 1985 suffering from a myocardial infarction and discharged on January 8, 1986. She was readmitted on January 12, 1986, at which time she was suffering from a second myocardial infarction. The hearing officer determined that although the second admission was medically necessary, and although the patient was treated properly on both occasions and hospitalized for the appropriate length of time, payment for the second hospitalization must be denied because the readmission occurred within seven days of the discharge and was based upon "complications/medical condition which related to the first admission."

The relevant DPW regulation reads as follows: Payment policy for readmissions.

(a) *Except as specified in subsection (c),* if a recipient is readmitted to a hospital within seven days of discharge, the Department makes no payments in addition to the hospital's original DRG [diagnosis related group] payment. If the combined hospital stay qualifies as an outlier under § 1163.56 (relating to outliers) an outlier payment will be made.

(b) If a patient is readmitted within 7 days of discharge for the treatment of conditions that could or should have been treated during the previous admission, the Department makes no payment in addition to the hospital's original DRG payment.

(c) *Except as specified in subsection (b),* if a patient is readmitted to the hospital due to complications of the original diagnosis and this results in a different DRG with a higher payment rate, the Department pays the higher DRG payment rate rather than the original DRG rate.

(d) *Except as specified in subsection (b),* if a patient is readmitted to the hospital due to conditions unrelated to the previous admission, the Department considers the readmission a new admission for payment purposes.

55 Pa. Code 1163.57. (Emphasis added.)

Further, Regulation 1163.77(c) provides:

If the recipient is readmitted to the hospital within 7 days of discharge, the admission review shall include a review of the patient's previous admission to determine if:

(1) The readmission is for the provision of services that could or should have been provided during the previous admission.

(2) The readmission is the result of complications of the conditions that led to the previous admission.

(3) The readmission is unrelated to the previous admission.

Payment was denied to Windber under Regulation 1163.57(c). Windber asserts that, while B. J. suffered two myocardial infarctions, the second one was not related to the first; rather it was related to the underlying coronary artery disease. Hence, it maintains that the cost for treatment of the second infarction should be recoverable under Regulation 1163.57, subsection (d). DPW explains the policy behind Regulation 1163.57 as follows:

Under DRGs, hospitals receive fixed payments for each hospital admission. The fixed payment is determined by a complicated formulae [sic], but an essential component of that formulae [sic] is the average length of stay associated with a particular diagnosis. If a particular patient stays shorter than the average, then the hospital will make money. If the patient stays longer, the hospital will lose money. On the average, the hospital should receive its costs.

The readmission rules are designed to prevent hospitals from discharging patients prematurely and readmitting them for the purpose of doubling their DRG payment. While the readmission rules may occassionaly [sic] work unfairly, they are essential to client protection and the fiscal integrity of the DRG system. *The hospital may have lost money in the particular case under appeal here due to the readmission. It should make money in other cases.*

DPW brief pp. 5-6 (emphasis added). DPW thus contends that Windber's argument that the focus should be

upon the precipitating event (second infarction) instead of the underlying disease, is illogical because, "such a construction [of the regulation] would encourage hospitals to discharge patients prematurely so as to precipitate 'unrelated' events which cause profitable readmissions," a result DPW argues Regulation 1163.57 seeks to prevent. (DPW brief p. 6.)

We believe the DPW's position imputes the basest of motives to Windber's discharge and readmission of this patient; *i.e.* to "make money" at the expense of the patient. Yet, it is undisputed by DPW's own medical witness that B. J. received proper care during her initial stay at Windber, that her discharge on January 8 was proper, and that her readmission less than one week later was proper and medically necessary. Despite these facts, DPW concludes that the second hospitalization was medically related to the first. If, however, the second infarction had occurred more than seven days after the first one, DPW admits that Windber could have received payment for the second admission.

Our reaction to this result cannot be expressed any better than by B. J.'s attending physician, Dr. Jerry Gray, who stated at the hearing:

> Because [B. J.] was unfortunate enough to have the second infarction before the week was out, after her discharge from the first . . . payment should be denied for the second infarction . . . I frankly think it's ludicrous.

DPW would have us interpret subsection (a) of Section 1163.57 as if we had blinders on and eliminate the initial six words, *i.e.*, "except as specified in subsection (c)." Further, subsection (c) refers to subsection (b), and that subsection clearly states that only if the patient's condition on the second admission could have been treated during the previous admission, is payment denied. How could Windber have treated B. J. for her

second heart attack during her first admission? We agree with Dr. Gray; such a suggestion is ludicrous.

Accordingly, we hold that the phrase "complications of the original diagnosis" in Regulation 1163.57(c) and the phrase "complications of the conditions" in Regulation 1163.77(c), in this instance must be construed to mean the myocardial infarction, not the underlying coronary artery disease. Were we to interpret these regulations otherwise, the result would be to deny payment for medical treatment which the parties *agree* was necessary in an instance where the propriety of the initial discharge is not even questioned. We believe that that result would not be one which was within the intendment of the legislature.

Thus, we conclude that DPW's interpretation of Regulation 1163.57, as applied to this case, was in error and, accordingly, we reverse.

### ORDER

NOW, August 5, 1988, the order of the Office of Hearings and Appeals in the above-captioned matter is hereby reversed.